**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**
**Civil Actions Branch**
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Telephone: (202) 879-1133 • Website: www.dccourts.gov

ESTATE OF EZANA ALEXANDER OTIS MATTHEWS

Vs.                                                    C.A. No.        2018 CA 002337 B

DISTRICT OF COLUMBIA

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the summons, the complaint, and this Initial Order and Addendum. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in Super. Ct. Civ. R. 4(m).

(3) Within 21 days of service as described above, except as otherwise noted in Super. Ct. Civ. R. 12, each defendant must respond to the complaint by filing an answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in Super. Ct. Civ. R. 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an initial scheduling and settlement conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than seven business days before the scheduling conference date.
No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Robert E. Morin

Case Assigned to: Judge JOHN M CAMPBELL
Date:   April 9, 2018
Initial Conference: 9:30 am, Friday, July 06, 2018
Location:   Courtroom 519
        500 Indiana Avenue N.W.
        WASHINGTON, DC  20001

CAIO-60

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement.  The early mediation schedule shall be included in the Scheduling Order following the ISSC.  Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator.  Information about the early mediation date also is available over the internet at https://www:dccourts.gov/pa/.  To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. D.C. Code § 16-2825 Two separate Early Mediation Forms are available.  Both forms may be obtained at www.dccourts.gov/medmalmediation.  One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator.  Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W.  Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov.  *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles.  All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a).  If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code§ 16-2826.  Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Actions Branch.  The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief   Judge   Robert   E.   Morin

**Superior Court of the District of Columbia**
CIVIL DIVISION
Civil Actions Branch
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

Alexander Otis Matthews, As Personal Representative For The Estate
of Ezana Alexander Matthews, _____ Plaintiff
Deceased                              vs.

**18-0002337**

Case Number _____

District of Columbia, et al
_____ Defendant

### SUMMONS

To the above named Defendant:

    You are hereby summoned and required to serve an Answer to the attached Complaint, either
personally or through an attorney, within twenty one (21) days after service of this summons upon you,
exclusive of the day of service. If you are being sued as an officer or agency of the United States Government
or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your
Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The
attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed
to the plaintiff at the address stated on this Summons.

    You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue,
N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on
Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on
the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer,
judgment by default may be entered against you for the relief demanded in the complaint.

Alexander Otis Matthews
_____
Name of Plaintiff's Attorney
24394-016, LSCI Allenwood
PO BOX 1000, White Deer, PA 17887
_____
Address

n/a
_____
Telephone
如需翻译,请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828로 전화주십시오.       የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

_Clerk of the Court_

By _____
                  Deputy Clerk

Date _____

    IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU
ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT
MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE
COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR
REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS
ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

    If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the
Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500
Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

Alexander Otis Matthews, As Personal Representative
For The Estate of Azana Alexander Otis Matthews, Deceased

                                                    **18 - 0002337**
                              *Plaintiff*

           *vs.*          RECEIVED          CIVIL ACTION No. _____
                       Civil Clerk's Office
                          APR 0 3 2018
                       Superior Court of the
District of Columbia, et al   District of Columbia
                          Washington, D.C.

                              *Defendants*


                              **COMPLAINT**


1. **Jurisdiction of this court is founded on D.C. Code Annotated, 2001 edition, as amended, Sec. 11-921.**




    **Wherefore, Plaintiff demands judgment against Defendant in the sum of $** _17,000,000.00_____
**with interest and costs.**

                                             _____n/a_____
                                             **Phone:**

**DISTRICT OF COLUMBIA, SS** ▓▓▓▓▓▓▓▓

_Alexander Otis Matthews_____, **being first duly sworn on oath deposes and says that the**
**foregoing is a just and true statement of the amount owing by defendant to the paintiff, exclusive of all**
**set-off and just grounds of defense.**

                              _____
                              **(Plaintiff)**                      **Agent)**

**Subscribed and sworn to before me this** _____ **day of** _____ **20** ____.

                              _____
                              **(Notary Public/Deputy Clerk)**
                                   2/23/18

IN THE SUPERIOR COURT FOR THE
DISTRICT OF COLUMBIA

Alexander Otis Matthews,
As Personal Representative of the
Estate of Ezana Alexander Matthews,
Deceased
plaintiff

v.                                    Case No. **18- 0002337**
                                      Jury Trial Demanded

District of Columbia, et al
defendants

<u>Complaint</u>

<u>Preliminary Statement</u>

    This is a civil rights action filed by Alexander Otis
Matthews, a federal prisoner proceeding pro se, for monetary
damages pursuant to 42 USC 1983, <u>Monell v. N.Y. City of Social
Services</u>, 436 US 658 (1978), and the common law of the District
of Columbia.

<u>Jurisdiction</u>
    This court has juridiction to hear this complaint under
28 USC 1331 and 1367, DC Code 12-101, and the common law of the
District of Columbia.

<u>Venue</u>
    This court is the proper venue for this matter under 28
USC 1391.

<u>Parties</u>
1. Alexander Otis Matthews, is the father of Ezana Alexander
Matthews, and is acting as the personal representative for his
son pursuant to DC Code 12-101. Ezana Alexander Matthews was a
resident of the District of Columbia.

2. Defendant John Doe was the Metropolitan Police Department's
responding officer to the scene of the events described, and upon
information and belief is a resident of the District of Columbia.

3. Defendant Jane Doe is the responding officer's supervisor at
the precinct out of which the responding officer was dispatched,
and upon information and belief is a resident of the District of
Columbia.

4. Jane Doe is the Chief of the Metropolitan Police Department,
a defendant in the suit, and upon information and belief is a
resident of the District of Columbia.

5. Defendant District of Columbia is the municipality which
employed the above named personal defendants.

6. The personal defendants are being sued both in their personal

-1-

and official capacities.

7. The defendants were at all times acting under color of law during the events described in the complaint.

8. The events described herein took place between May 4th, 2017 and November 1st, 2017.

## Statement of Facts & Applicable Law

6. Ezana Alexander Matthews (Ezana) was the oldest of five children born to Alexander Otis Matthews. Ezana was one of two children born to Alexander Otis Matthews and his first wife, Kibra Abraham, and Alexander Otis Matthews had three additional children with his second wife, Kawthar Fathi.

7. Ezana was a bright child who completed one year of college at VA State University before transferring to Rutgers University to complete his second year of college. After completing a year at Rutgers Ezana decided to take a break to indulge his sense of adventure and his love for the United States as a nation, and he joined the U.S. Army. Ezana was honorably discharged from the Army based on his medical needs, the Army discharging him with an encouragement for him to get help with what it called his depression.

8. Ezana returned home from the Army to live with his paternal grandmother in the District of Columbia, who lived alone on Capitol Hill. After returning from the Army Ezana was socially withdrawn during long periods from both friends and family members and seemed to be affected by bouts of extreme paranioa and anxiety. Ezana's dad, mom, and grandmother, among others, encouraged him to get help and treatment for his condition but he downplayed it and refused to address the issue no matter how much many times he was confronted. Because he was over 21 years of age he could not be forced to get treatment or help under the circumstances.

9. On May 4th, 2017, after returning from a short trip to Florida, Ezana's maternal grandmother, Dr. Martina Pinkney Matthews, returned to her home on 9th Street, N.E.. Upon having entered her home, going up the stairs to the second level of the townhouse, she discovered Ezana hanging from a pull-up bar under the transom of the second level's rear bedroom.

10. Dr. Matthews called 911, and was told to cut Ezana down immediately. In a state of shock, Dr. Matthews, who was 81 years of age, ran to a neighbor's home across the street and came back with a group of young men who were able to physically perform the task of cutting Ezana down. They were members of a professional music group, and they were able to cut Ezana down and wait for the responding authorities from the District of Columbia.

-2-

11. Upon arriving at the scene, the responding officer, in clear violation of all applicable laws, statutes, regulations, MPD special and general orders when encountering unconscious persons, and national standards for police when acting as first responders in emergency situations, made no effort to provide oxygen to Ezana, to employ a ventibreather or automatic external defibrillator, to check his core body temperature, or to attempt CPR. Even if Ezana had no discernable pulse when the responding officer arrived, persons apparently no longer breathing have been revived using resuscitory techniques, which is why national standards require the employment of CPR and other procedures and why police are required to attempt to resuscitate unconscious persons in such emergency situations when they are acting as first responders.

12. The responding officer and the District of Columbia were not only negligent in failing to apply national standards in their response to Ezana's medical situation, they were also wholly negligent in their investigation of the circumstances surrounding his death. That is, despite Ezana's cell phone, laptop, notebooks, and other personal effects being in plain view in the room in which he was found, the responding officer and the detective assigned to the case made no effort to examine the contents of his electronic devices or even his notebooks where he kept daily journals of his thoughts and activities. The responding officer, the detective assigned to the case, and the District of Columbia made no effort to inquire into the possible causes or circumstances of this 25 year-old soldier who had just returned from serving our nation, made no effort to give his family some closure by providing at least a cursory attempt to determine his mental state, any problems revealed by his communications, or any signals that may have provided a basis for his decision to take his own life. In any suicide case, especially for an otherwise healthy, young person with no history of drug or alcohol abuse and no criminal record, police standard procedure calls for a basic inquiry into the death and possible contributing factors...so many things may come into play in a suicide that a basic inquiry must be done so that nothing is overlooked and so that a human being with its own intrinsic value is not put to rest with given his loved ones some closure and some idea of what led him or her to take their own life. In this case Ezana's life was not handled with the dignity he deserved and his death was trivialized by the responding officer, the detective assigned to the case, and thus by the District of Columbia. In our time a person's cell phone and computer usually tell a clear story as to that person's mental state and activities and proclivities, and in Ezana's case no effort of any type was made to examine the contents of said devices.

13. The investigation into Ezana's suicide was so lacking that the police report issued even fails to mention or document the fact of the members of the music group being the party

to cut Ezana down, despite members of the music group
later stating that they were interviewed by the responding
officer as to the circumstances surrounding Ezana's suicide.
Despite this interview the responding officer failed to
include this important detail in his report, again failing to
treat Ezana's death with the dignity he deserved, in fact
treating Ezana's death in an undignified manner and failing
to document an accurate record of the circumstances regarding
Ezana's suicide and death. Under the negligent actions and
non-actions of the defendants in their failure to render
proper assistance and lack of proper emergency equipment
no reasonable effort was made to revive Ezana when he was
found unconscious, and no reasonable effort (in fact no
effort at all) was made to provide the family or even the
MPD itself with a basic investigation to determine the
possible factors and causes leading Ezana to commit suicide.
Ezana lived a full life, a life with meaning and purpose,
and he was loved deeply by his family; that family has a
right to know the full circumstances of his death, and under
District of Columbia law the responding officer had a duty
of care to render proper assistance to Ezana when he was
found unconscious.

14. At the trial in this matter the plaintiff will provide
expert testimony from a witness as to the documented instances
of the District of Columbia's failure to properly train and
supervise its MPD officers in rendering proper assistance
to unconscious persons and in failing to provide them with
the proper emergency equipment for such tasks. The witness will
show such a consistency of failures by the district in this
regard as for the failures to amount to being a policy or
custom of the District of Columbia in this area, and the
witness will testify as to national standards for law
enforcement in this area and as to how the District of
Columbia deviates from this national standard.

15. Through discovery the plaintiff will obtain the names and
addresses of all the john doe and jane doe defendants and will
request service of process on these defendants as well as upon
the District of Columbia itself.

16. Pursuant to DC CODE 12-309, on 10/21/17 the plaintiff
mailed to the Mayor of the District of Columbia notice in
writing providing the approximate time, place, cause, and
circumstances of injuries incurred against the decedent in this
action. If the Court deems the plaintiff unable to proceed on behalf of his son as his personal
representative, the plaintiff asks the Court to appoint a Guardian Ad Litem or other counsel instead.

## CLAIMS FOR RELIEF

a. The actions of defendant john doe/responding officer in
failing to render proper assistance and failing to properly
respond to decedent's hanging were done in violation of the
common law of the District of Columbia.

b. The actions of defendant john doe/responding officer in failing to apply the proper emergency equipment to decedent's hanging was done  in violation of the common law of the District of Columbia.

c. The actions of defendant john doe/responding officer were both negligent and negligent per se in failing to render proper assistance to the decedent and in failing to apply the proper emergency equipment to the decedent when he was found unconscious.

d. The actions of defendant john doe/responding officer in showing deliberate indifference to the decedent's medical needs were done in violation of the decedent's Fifth Amendment Due Process rights under the U.S. Constitution and in violation of the decedent's rights under the Eighth Amendment to the U.S. Constitution. The defendant was deliberately indifferent to the substantial risk to the decedent's health and safety because suicide is a serious harm , it is a plainly obvious risk to a person's health and safety.

e. The actions of defendant john doe/responding officer were both negligent and negligent per se because the responding officer had a duty of care to provide proper medical assistance to the decedent, he wholly failed to provide that assistance to the decedent, and thus harmed the decedent by never providing the assistance required under the circumstances.The defendant's failures were the direct and proximate cause of decedent's injuries.
f. There is a claim of supervisory negligence/respondeat superior against jane doe/responding officer's supervisor and jane doe/MPD Chief because they showed deliberate indifference by having actual or constructive knowledge of past transgressions among MPD officers responding to emergency siuations , and they knew of this deficient training and the harm this lack of training posed to the community.

g. The actions of the District of Columbia constitute negligent training and supervision, contributory negligence, because it knew or should have known about deficiencies among its MPD officers in responding as first responders in emergency situations, and armed with that actual or constructive knowledge failed to adequately train and supervise its employees.The defendant's failures were the direct and proximate cause of the decedent's injuries.
h. The actions of the District of Columbia constitute negligence because it knew, or reasonable should have known, of the decedent's need for proper emergency treatment, based on the 911 call referencing his suicide attempt by hanging, and yet it failed to provide that care, harming the decedent by denying him that proper treatment.
i. The actions of the District of Columbia constitute gross negligence because it had a heightened duty,a special duty based upon  the emergency call and his suicidal condition, yet it failed to provide that proper medical treatment, harming

the deceased by denying him proper medical attention mandated under national standards for officers acting as first responders. The defendant's failures were the direct and proximate cause of the decedent's injuries.

i. The actions of the District of Columbia in failing to properly train and supervise its officers in providing emergency medical care as first responders violated the decedent's Fifth Amendment Due Process rights guaranteed to him under the Fifth Amendment to the U.S. Constitution.

j. The District of Columbia's actions constitute the tort of Intentional Infliction Of Emotional Distress upon the decedent and his family members due to the responding officer's wholesale and outrageous failure to render proper medical assistance to the decedent, which intentionally or recklessly caused severe emotional distress to the decedent's family members in realizing and knowing that the responding officer failed to take proper and reasonable steps to render medical assistance to the decedent.

k. The actions of defendant District of Columbia in maintaining a policy or custom of failing to properly train and supervise its officers in administering medical assistance when acting as first responders, amounts to deliberate indifference in violation of the decedent's Eight Amendment rights, when the District of Columbia knew or reasonably should have known of this deficient training and supervision within the MPD.

l. The actions of defendant District of Columbia in wholly failing to conduct even a cursory investigation into the causes and circumstances of the decedent's death violate the decedent's Due Process rights guaranteed to him under the 5th Amendment to the U.S. Constitution.

m. The actions of defendant District of Columbia in wholly failing to investigate the causes and circumstances of the decedent's death constitute negligence and negligence per se as well as supervisory negligence because basic MPD statutes, regulations, special and general orders, and national law enforcement standards require investigation into the events leading to and resulting in a person's suicide.At trial in this matter the plaintiff will proffer testimony from an expert witness as to the documented instances of the District of Columbia's failure to properly train and supervise its MPD Officers in the necessity and procedure to conduct investigations in cases of suicide and other cases involving death. The witness will show such a consistency of failures by the District of Columbia in this regard as for the failures to amount to being a policy or custom of the District of Columbia in this area, and the witness will testify as to national standards for law enforcement in this area and as to how the District of Columbia deviates from this national standard.

-6-

## Relief

The plaintiff respectfully requests the following amounts jointly and severally against the defendants:

- compensatory damages in the amount of $10 million USD against defendant District of Columbia
- compensatory damages in the amount of $5 million USD against defendant john doe/MPD responding officer
- compensatory damages in the amount of $1 million USD against defendant jane doe/ MPD Chief
- compensatory damages in the amount of $1 million USD against defendant jane doe/ responding officer's supervisor
- any further relief deemed just and proper by the Court

WHEREFORE the plaintiff prays for the relief requested.

Respectfully,

Date: 1/29/08

Alexander Otis Matthews,
As Personal Representative Ofr
The Estate of Ezana Alexander Matthews,
Deceased
24394-016
LSCI Allenwood
PO BOX 1000
White Deer, PA 17887

FILED
CIVIL ACTIONS BRANCH
For:
APR 0 3 2018
Superior Court
of the District of Columbia
Washington, D.C.

DC Superior Court
Judge-In-Chambers
Washington, DC 20001

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### FAMILY COURT and CIVIL DIVISION

Alexander Otis Matthews, As Personal Representative For The
Plaintiff/Petitioner                      Estate of Alexander Otis Matthews,
                                          Deceased
v.                                        Case no: **18 - 0 0 0 2 3 3 7**

District of Columbia, et al
Defendant/Respondent

## APPLICATION TO PROCEED WITHOUT PREPAYMENT
## OF COSTS, FEES, OR SECURITY (*In Forma Pauperis*)
### Form 106A

I, ___Alexander Otis Matthews_____ am the (check one)
☒ Plaintiff/Petitioner   ☐ Defendant/Respondent

I need an interpreter for this case.   I speak the following language:
_____n/a_____ [Insert Language].

I respectfully ask permission to proceed in this case without pre-paying costs
or fees and without giving security for them because I am not able to do so
without substantial hardship to myself or to my family. In support of this
request, I state the following:

Check and answer only those that apply.

### INCOME

1. I receive the following public benefits, and the law presumes that I
am eligible to proceed without prepayment of costs, fees, or security
(see D.C. Code § 15-712):

☐ Temporary Assistance for Needy Families (TANF)
☐ General Assistance for Children (GAC)
☐ Program on Work, Employment and Responsibility (POWER)
☐ Supplemental Security Income (SSI)

2. Even though I do not receive the above public benefits, I receive the following similar benefits and, therefore, request that my Application be approved:

☐ Interim Disability Assistance (IDA) because my SSI application has not been approved/certified

☐ Medicaid

☐ DC Healthcare Alliance or the following similar health benefits (describe)_____.

If you checked any of the above boxes, you do not need to answer any more questions and may skip to the section called "Declaration." Otherwise, you must answer the rest of the questions on this form. If additional information is required, you will be notified.

3. My total income over the past 12 months from all sources (including, but not limited to, my job, other wages or business income, rental income, pensions, annuities or life insurance payments, worker's compensation, unemployment compensation or insurance, annual interest or dividends, gifts, alimony or spousal support, inheritance or trust income) is $_850.00_.

4. I am presently unemployed.  The last date I worked was on
_____, _____.
        Month              Year

## DEPENDENTS

5. How many people live in your household and depend on you for support: __3_____.   Of these people, how many are minor children or elderly? __2_____.

2

Form 106A

## ASSETS

6. I state the following about my property:

I have $ __35.00__ in cash, including money in savings or checking accounts.

I own the vehicles, personal home, other real estate, stock, bonds, or other valuable property, besides household furnishings and clothing, listed below:

n/a _____

_____

_____.

List the Property

## EXPENSES

7. This is my best estimate of the monthly expenses for myself and the people in my household who depend on me for support:

Housing (rent, mortgage, taxes, & insurance): $ _1200__
Public Transportation and Gasoline: $ _40_____
Automobile Loan, Insurance, Maintenance: $ _60_____
Health (medical, dental, vision, prescriptions, insurance): $ _____
Food and other Household Necessities: $ __300_____
Utilities (including gas, electric, water, phone, internet): $ _100_____
Clothing: $ _50_____
Child Support: $ _____
Childcare (including diapers, daycare): $ _____
Other (explain in detail): $ _____

**Total Estimated Monthly Expenses**: $ _1700.00__

Form 106A

## OTHER SPECIAL CIRCUMSTANCES

☒ 8. (Optional) Explain any other special circumstances that you want to have considered in support of your request, including any large monthly expenses, debts, wage or bank account garnishments, and/or judgments.

I have been an indigent federal inmate since 5/14/2011 and complete my sentence in the fall of 2018. My income from my job in prison is less than three dollars monthly, the rest I get from my family, usually 50.00 monthly. .
I have self represented myself in my criminal appeal, which is still pending after the Fourth Circuit vacated and remanded my case in Appeal 15-6656 on 11/5/2015.

4

Form 106A

## DECLARATION

**REQUIRED:** I solemnly swear or affirm under criminal penalties for the making of a false statement, which includes 180 days in jail or a $1,000 fine or both, that I have read this Application and that the factual statements made in it are true to the best of my personal knowledge, information and belief.[1]

_____
Signature

24394-016, LSCI Allenwood, PO BOX 1000
White Deer, PA 17887
_____
Address

n/a
_____
Phone Number

2/21/2018
_____
Date

## POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION TO PROCEED WITHOUT PREPAYMENT OF COSTS, FEES, OR SECURITY

1. D.C. Code § 15-712.
2. D.C. Code § 22-2405.
3. Civil Rule 54-II, Domestic Relations Proceedings Rule 54-II, and Family Rule R.
4. *Adkins v. E.I. Du Pont de Nemours & Co., Inc.*, 335 U.S. 331 (1948).
5. *Harris v. Harris*, 137 U.S. App. D.C. 318, 322, 424 F.2d 806 (1970), *cert. denied*, 400 U.S. 826 (1970) ("*in forma pauperis* relief not limited to those who are public charges or absolutely destitute").
6. *Green v. Green*, 562 A.2d 1214 (D.C. 1989) (statute "effectuates the fundamental principle that every litigant should be provided equal access to the courts without regard to financial ability").
7. *Herbin v. Hoeffel*, 727 A.2d 883, 887 (D.C. 1999) (court officers serve process in *in forma pauperis* cases).
8. *Cabillo v. Cabillo*, 317 A.2d 866, 866 (D.C. 1974) (per curiam) (reversing denial of *in forma pauperis* status and mandating granting of petition where litigant's income "only slightly above the welfare standard").

---

[1] When you come to court, you may be asked questions about this Application. If your responses are not truthful, you could face additional criminal penalties.

5

Form 106A

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
FAMILY COURT and CIVIL DIVISION

FILED
CIVIL ACTIONS BRANCH
APR 0 3 2018
Superior Court of
District of Columbia
Washington, D.C.

Alexander Otis Matthews, As Personal Representative For The
Plaintiff/Petitioner                    Estate of Alexander Otis Matthews,
                                        Deceased
v.
                              Case No. **18-0002337**
District of Columbia, et al
Defendant/Respondent

<u>**ORDER**</u>

Having considered ☒ Plaintiff/Petitioner's   ☐ Defendant/Respondent's Application to Proceed without Prepayment of Costs, Fees, or Security, it is hereby ordered that the Application is:

☐   **GRANTED** in this Family Court case and, pursuant to Domestic Relations Rule 54-II, witnesses will be subpoenaed without prepayment of witness fees;

☒   **GRANTED** in this Civil Division case and, pursuant to Civil Rule 54-II, the officers of the Court will issue and serve all process; witnesses will be subpoenaed without prepayment of witness fees;

☐   **DENIED**

☐   For the following reasons: _____

_____

☐   For the reasons stated on the record in open court and in the presence of the applicant or his or her counsel;

4/3/18                    _____
Date                      Judge

6                                    Form 106A