UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ALEXANDER OTIS MATTHEWS, as
Personal Representative for the Estate of
Ezana Alexander Matthews,

      *Plaintiff*,

    v.

DISTRICT OF COLUMBIA,

      *Defendant.*

Civil Action No. 18-1190 (RDM)

**MEMORANDUM OPINION**

The matter is before the Court on Defendant District of Columbia's motion to dismiss. Dkt. 5. Plaintiff Alexander Otis Matthews, proceeding *pro se*, is suing the District under the District's Survival Statute, D.C. Code § 12-101, as the personal representative of his son, Ezana Alexander Matthews ("Mr. Matthews"). Plaintiff alleges that a Metropolitan Police Department ("MPD") first responder and MPD detective acted tortiously and violated Mr. Matthews's constitutional rights when they failed to render medical aid and failed to investigate the circumstances surrounding his death. Although Plaintiff has undoubtedly suffered a great loss, the Court concludes that he has failed to state a claim for relief. The Court will, accordingly, **GRANT** the District's motion to dismiss. Dkt. 5.

**I. BACKGROUND**

For purposes of the pending motion, the Court accepts as true the facts alleged in the complaint, Dkt. 1. *See Wood v. Moss*, 572 U.S. 744, 755 n.5 (2014); *see also Williams v. Ellerbe*, 317 F. Supp. 3d 144, 146 (D.D.C. 2018).

Plaintiff's son, Ezana Alexander Matthews, served in the United States Army. Dkt. 1-1 at 6 (Compl. ¶ 7). Mr. Matthews returned home to the District after being honorably discharged and lived with his paternal grandmother on Capitol Hill. *Id.* (Compl. ¶¶ 7–8). Upon his return, Mr. Matthews's family and friends noticed that he was "socially withdrawn" for "long periods" of time and "affected by bouts of extreme paranoia and anxiety." *Id.* (Compl. ¶ 8). Nevertheless, Mr. Matthews "downplayed" his condition and refused to seek treatment. *Id.*

On May 4, 2017, Mr. Matthews's grandmother returned home to find Mr. Matthews hanging in a bedroom. *Id.* (Compl. ¶ 9). She called 911 and was "told to cut [Mr. Matthews] down immediately." *Id.* (Compl. ¶ 10). She "ran to a neighbor's home across the street and came back with a group of young men who were able to physically perform the task." *Id.* She then waited for "the responding authorities." *Id.*

Upon arriving at the scene, the responding MPD officer allegedly "made no effort to provide oxygen to Mr. Matthews, to employ a ventibreather or automatic external defibrillator, to check his core body temperature, or to attempt CPR." *Id.* at 7 (Compl. ¶ 11). The officer's conduct, according to Plaintiff, was "in clear violation of all applicable laws, statutes, regulations, [and] MPD special and general orders when encountering unconscious persons." *Id.* Plaintiff further claims that the responding officer and a "detective assigned to the case" were "wholly negligent in their investigation of the circumstances surrounding [his son's] death." *Id.* (Compl. ¶ 12). The officers allegedly "made no effort to inquire into the possible causes or circumstances" of Mr. Matthews's suicide. *Id.* They did not, for example, "examine the contents of his electronic devices or . . . his notebooks where he kept daily journals of his thoughts and activities." *Id.* Finally, Plaintiff alleges that the police report failed to provide "an

accurate record of the circumstances regarding Mr. Matthews's suicide and death." *Id.* at 8 (Compl. ¶ 13).

Plaintiff's complaint asserts three sets of claims. First, Plaintiff alleges that the District violated Mr. Matthews's Fifth and Eighth Amendment rights by failing adequately to train and supervise MPD officers in responding to emergency situations, *id.* at 10 (Compl. ¶¶ i, k), and Mr. Matthews's Fifth Amendment rights by failing to investigate the cause and circumstances of his death, *id.* (Compl. ¶ *l*). Second, he alleges that the District was negligent in failing adequately to train and supervise its officers in responding to emergency situations, *id.* at 9 (Compl. ¶ g); that it was negligent and grossly negligent in failing to provide proper assistance upon arriving at the scene, *id.* at 9–10 (Compl. ¶¶ h–i); and that it was negligent and negligent per se in failing to investigate the cause and circumstances of Mr. Matthews's death, *id.* at 10 (Compl. ¶ m). Third, he alleges that the responding officer's failure to administer medical assistance constitutes intentional infliction of emotional distress. *Id.* (Compl. ¶ j).

On May 29, 2018, the District moved to dismiss the case. Dkt. 5. Plaintiff opposed the motion. Dkt. 13. He also moved to serve Cathy Lanier—who he believed to be the MPD Chief at the time of his son's death—and to compel limited discovery to obtain the identities of the responding officer and his or her supervisor. *Id.* at 5. The Court construed Plaintiff's motion to serve as a motion to amend the complaint to add Lanier as a defendant and denied the motion as futile because the District represented that she was not employed by the MPD at the time of the events at issue. *See* Minute Order (Oct. 4, 2018). The Court, however, granted Plaintiff's motion for limited discovery and ordered that the District disclose the identities of the first responder and his or her supervising officer. *Id.* The District turned over this information on October 30, 2018. Dkt. 20. On January 4, 2019, Plaintiff filed a motion to amend his complaint

3

to add Officer Zachary Powell, Sergeant Michael Cashman, and Chief Peter Newsham as defendants. Dkt. 22. The Court granted that motion on the condition that Plaintiff file his amended complaint on or before February 1, 2019. Minute Order (Jan. 11, 2019). The Court now turns to the District's motion to dismiss. Dkt. 5.

## II. LEGAL STANDARD

A motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6) is designed to "test[ ] the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In evaluating a motion to dismiss, the Court "must first 'tak[e] note of the elements a plaintiff must plead to state [the] claim' to relief, and then determine whether the plaintiff has pleaded those elements with adequate factual support to 'state a claim to relief that is plausible on its face.'" *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015) (alterations in original) (internal citation omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675, 678 (2009)). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to 'state a claim to relief that is plausible on its face,'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

## III. ANALYSIS

For the reasons set forth below, the Court concludes that Plaintiff has failed to state a claim for relief under the U.S. Constitution or D.C. common law.

**A.    Plaintiff's Constitutional Claims**

Plaintiff raises two constitutional claims. He alleges (1) that the District violated Mr. Matthews's Fifth and Eighth Amendment rights by failing adequately to train and supervise MPD officers in responding to emergency situations, Dkt. 1-1 at 10 (Compl. ¶¶ i, k), and (2) that

the District violated Mr. Matthews's Fifth Amendment rights by failing to investigate the cause and circumstances of his death, *id.* (Compl. ¶ *l*). Both claims fail as a matter of law.

*First*, Plaintiff's claim that the District violated Mr. Matthews's Eighth Amendment rights founders because "the Amendment's prohibition against 'cruel and unusual punishment' applies only to persons against whom the government 'has secured a formal adjudication of guilt in accordance with due process of law.'" *Ford v. Donovan*, 891 F. Supp. 2d 60, 65 (D.D.C. 2012) (quoting *Power-Bunce v. District of Columbia*, 479 F. Supp. 2d 146, 153 (D.D.C. 2007)). Because the complaint does not allege (and there is no reason to believe) that Mr. Matthews had been convicted of a crime, the Eighth Amendment is inapplicable.

*Second*, Plaintiff fails to allege facts sufficient to show that the District violated Mr. Matthews's Fifth Amendment right to due process. Plaintiff does not indicate whether he intends to bring a substantive or procedural due process claim. But, because he is alleging "that [the District] was categorically obligated to protect [Mr. Matthews] in these circumstances," not that it denied Mr. Matthews "protection without according him appropriate procedural safeguards," Plaintiff's claim "is one invoking the substantive rather than the procedural component of the Due Process Clause . . . ." *DeShaney v. Winnebago Cty. Dep't Social Servs.*, 489 U.S. 189, 195 (1989). The Supreme Court has cautioned that "the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *Id.* at 196 (citations omitted). That is true even where a statute *mandates* police action. *See Town of Castle Rock v. Gonzales*, 545 U.S. 748, 764 (2005) (holding that the police's failure to enforce a restraining order was not a substantive due process violation because "[e]ven if the [state] statute could be said to have made enforcement of retraining orders

'mandatory'[,] . . . that would not necessarily mean that state law gave *respondent* an entitlement to *enforcement* of the mandate"). Only when "the State takes a person into its custody and holds him there against his will, [does] the Constitution impose[] upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney*, 489 U.S. at 199 (citing *Youngberg v. Romero*, 457 U.S. 307, 317 (1982) (holding that the State has a special duty to provide certain services when a person is institutionalized)). "The affirmative duty to protect arises not from the State's knowledge of the individual's predicament, or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." *Id.* at 200 (citing *Estelle v. Gamble*, 429 U.S. 97, 97 (1976)).

The sole basis for Plaintiff's due process claims is the District's failure to act. *See* Dkt. 1-1 at 9–10 (Compl. ¶¶ i, k). But, as noted above, Mr. Matthews had no constitutional entitlement to the proper training of MPD officers, the rendering of medical aid, or the investigation of the circumstances of his death. Nor is there any basis for the Court to conclude that the District owed Mr. Matthews an "affirmative [constitutional] duty to protect" arising from a "limitation which it has imposed on his freedom to act on his own behalf." *DeShaney*, 489 U.S. at 200. The Complaint does not allege (and there is no reason to believe) that Mr. Matthews was incarcerated or otherwise in custody at the time of his death. Plaintiff's only rejoinder is that *Ford*, 891 F. Supp. 2d 60, establishes that "a city's inaction . . . can constitute a policy or custom under *Monell*" and that "[t]here is no specific requirement that a person be in custody to allege a constitutional violation." Dkt. 13 at 3. But Plaintiff misreads that decision. The Court in *Ford* expressly recognized that "[t]he first inquiry" in a Fifth Amendment Due Process challenge is "whether the plaintiff has been deprived of a protected interest in 'liberty' or 'property.'" 891 F. Supp. 2d at 66. Plaintiff cannot state a policy or custom claim without alleging a predicate

constitutional harm. *Cf. Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (holding that, to state a claim for relief against the District under section 1983, a plaintiff must sufficiently plead both the existence of "a predicate constitutional violation" and "a custom or policy of the municipality [that] caused the violation").

The Court, accordingly, concludes that Plaintiff has failed to establish a violation of Mr. Matthews's Fifth Amendment or Eighth Amendment rights.

**B.     Plaintiff's Common Law Tort Claims**

    1.     *Negligence*

Plaintiff further alleges that the District was negligent, grossly negligent, and negligent per se for inadequately supervising and training MPD officers to respond to emergencies, for failing to render medical assistance to Mr. Matthews, and for failing to investigate the cause of his death. Dkt. 1-1 at 9–10 (Compl. ¶¶ g, h, i, m).[1] The District counters that Plaintiff's claims are barred by sovereign immunity and the public duty doctrine. Dkt. 15 at 5–7. The Court agrees.

        a.     <u>Failure to Train and Supervise</u>

Plaintiff's first claim—that the District "failed to adequately train and supervise its employees" despite having actual or constructive knowledge of "deficiencies among its MPD

---

[1] As a threshold matter, Plaintiff fails to state a claim for gross negligence or negligence per se. The District of Columbia "does not recognize degrees of negligence," *Hernandez v. District of Columbia*, 845 F. Supp. 2d 112, 115 (D.D.C. 2012) (quoting *Warner v. Capital Transit Co.*, 162 F. Supp. 253, 256 (D.D.C. 1958)); rather, a plaintiff can plead a separate gross negligence claim under D.C. law "only in [the] limited circumstances where gross negligence is a specific element of a claim or defense, or for equitable reasons," *id.* at 116 (internal citations omitted). No such circumstances exist here. Nor does Plaintiff allege a violation of any particular statute or rule that would give rise to negligence per se. *See Jarrett v. Woodward Bros., Inc.*, 751 A.2d 972, 977–78 (D.C. 2000).

7

officers in responding . . . in emergency situations," Dkt. 1-1 at 9 (Compl. ¶ g)—is barred by sovereign immunity.

In the District of Columbia, "the doctrine of sovereign immunity acts as a bar to bringing suit against [the District] for its discretionary functions." *Nealon v. District of Columbia*, 669 A.2d 685, 690 (D.C. 1995) (citation omitted); *see also Cherry v. District of Columbia*, 330 F. Supp. 3d 216, 228 (D.D.C. 2018). "The question of whether immunity is available . . . turns upon whether the act complained of is discretionary or ministerial." *Nealon*, 669 A.2d at 690. Discretionary acts generally involve "the formulation of policy," whereas ministerial acts involve its "execution." *Id.* (citation omitted). In the context of supervising police officers, although "the training and oversight of a particular individual" is a ministerial function, "the development of a department-wide training protocol" is discretionary. *Cherry*, 330 F. Supp. 3d at 229; *see also Dodge v. Stine*, 739 F.2d 1279, 1284 (7th Cir. 1984) ("Clearly, the decision as to the type of training, the content of instruction and the form of supervision are discretionary decisions."). The key inquiry is whether "the complaint alleges flaws in the District's day-to-day oversight . . . —the *execution* of rules and policies—or whether it complains of deficiencies in the *development* of municipal policy." *Cherry*, 330 F. Supp. 3d at 231.

Plaintiff alleges that the District maintained a "policy" of "failing to properly train and supervise its officers in administering medical assistance." Dkt. 1-1 at 10 (Compl. ¶ k). He does not assert that the District failed to supervise the first responder in this particular case but, rather, alleges that there are general "deficiencies" in the District's first response program. *See id.* at 9 (Comp. ¶ g) (claiming that the District "failed to adequately train . . . its employees" to respond to medical emergencies despite knowing about "deficiencies among its MPD officers"). Because Plaintiff appears to challenge the "type of training" and "the form of supervision" the District

8

affords its MPD first responders, *Dodge*, 739 F.2d at 1284, his claims squarely implicate the District's exercise of its discretionary functions. The Court, accordingly, concludes that Plaintiff's failure-to-train-and-supervise claim is barred by sovereign immunity.

b. <u>Failure to Provide Medical Care and to Investigate</u>

Plaintiff's second and third claims—that the District "failed to provide . . . proper medical treatment" and "fail[ed] to investigate the causes and circumstances" of his son's suicide, Dkt. 1-1 at 9–10 (Compl. ¶¶ i, m)—are barred by the public duty doctrine.

Under that doctrine, "[the] government and its agents owe no duty to provide public services to particular citizens as individuals;" rather, "absent some 'special relationship' between the government and the individual, the District's duty is to provide public services to the public at large." *Hines v. District of Columbia*, 580 A.2d 133, 136 (D.C. 1990). The "purpose of the public duty doctrine is to shield the District and its employees from liability associated with providing 'public services.'" *Powell v. District of Columbia*, 602 A.2d 1123, 1125 (D.C. 1992) (quoting *Hines*, 580 A.2d at 136). Accordingly, the "threshold for establishing a special relationship is very high." *Trifax Corp. v. District of Columbia*, 53 F. Supp. 2d 20, 30 (D.D.C. 1999). The plaintiff must either allege "a direct or continuing contact between the injured party and a governmental agency or official, and . . . a justifiable reliance on the part of the injured party," *Allen v. District of Columbia*, 100 A.3d 63, 70 (D.C. 2014) (citation omitted), *vacated,* Nos. 10-cv-1325, 13-cv-583, 2015 WL 5725532 (D.C. June 15, 2015),[2] or point to "a statute

---

[2] Although the public duty doctrine was called into doubt when the D.C. Court of Appeals granted rehearing en banc, vacating *Allen*, 100 A.3d 64, *see Allen*, 2015 WL 5725532, at *1, the D.C. Council subsequently codified the public duty doctrine and ratified the *Allen* decision, *see* D.C. § 5-401.02 ("The Council ratifies the interpretation and application of the public duty doctrine by the District of Columbia Court of Appeals up through the decision of September 25, 2014, in *Allen v. District of Columbia*, No. 10-cv-1425 . . . .").

[that] prescribe[s] 'mandatory acts clearly for the protection of a particular class of persons rather than the public as a whole,'" *Powell*, 602 A.2d at 1129 (quoting *Morgan v. District of Columbia*, 468 A.2d 1306, 1314 (D.C. 1983)).

Plaintiff has done neither. The complaint merely alleges that the District "had a special duty" to render medical aid and to investigate the circumstances of Mr. Matthews's death "based upon the emergency call and [Mr. Matthews's] suicidal condition." Dkt. 1-1 at 9 (Compl. ¶ i). But, as the District correctly points out, D.C. courts have held that "[a] one-time call to 911 for help does not establish a special relationship." *Wanzer v. District of Columbia*, 580 A.2d 127, 132 (D.C. 1990); *see also Warren v. District of Columbia*, 444 A.2d 1, 6 (D.C. 1981) ("A request for aid is not in itself sufficient to create a special duty."). Here, Plaintiff has failed to allege any facts that would demonstrate that Mr. Matthews had "direct or continuing contact" with the MPD, prior to his suicide, that would "justif[y] reliance." *Allen*, 100 A.3d at 70. Furthermore, although Plaintiff alleges that "[a] duty of care arises from DC laws, statutes, regulations, training, police standards, and police special and standing orders relating to the duty to render aid to unconscious persons," Dkt. 13 at 4, he has failed to identify a specific regulation or statute that requires the police to revive unconscious persons. *Cf. McGaughey v. District of Columbia*, 734 F. Supp. 2d 14, 19 (D.D.C. 2009) (holding that, unlike administrative regulations and statutes, "[a]gency protocols and procedures . . . are insufficient to give rise to a special relationship" (quoting *Wanzer*, 580 A.2d at 133)). Thus, Plaintiff has failed to allege sufficient facts to establish a special duty and, accordingly, his claim of negligence must fail.

    2.    *Intentional Infliction of Emotional Distress*

Finally, the District argues—and Plaintiff does not contest—that Plaintiff cannot "bring a claim [for intentional infliction of emotional distress ("IIED")] on behalf of [his son's] estate for

emotional distress suffered by family members." Dkt. 5 at 20 (capitalization omitted). The Court concurs. Plaintiff is suing as Mr. Matthews's personal representative, and the text of the District's Survival Statute is clear: the statute only authorizes suit "[o]n the death of a person . . . for any cause prior to his death." D.C. Code § 12-101. Plaintiff's claim, however, turns on injuries suffered by others after Mr. Matthews's death: he alleges that the officer's alleged "failure to render proper medical assistance to [Mr. Matthews] . . . caused severe emotional distress to [his] family members" when they "realiz[ed] . . . that the responding officer failed to take proper and reasonable steps to render medical assistance." Dkt. 1-1 at 10 (Compl. ¶ j). That does not state a claim on behalf of Mr. Matthews's estate. The complaint is devoid of any allegation that the officer's conduct "intentionally or recklessly" caused Mr. Matthews "severe emotional distress" prior to his death. *Competitive Enter. Inst. v. Mann*, 150 A.3d 1213, 1260 (D.C. 2016) (citation omitted) (stating the elements of IIED under D.C. law).[3]

---

[3] Even if Plaintiff had brought the claim on his own behalf, he would have failed to state an IIED claim. "To establish a prima facie case of [IIED], a plaintiff must show '(1) extreme and outrageous conduct on the part of the defendants, which (2) intentionally or recklessly (3) cause[d] the plaintiff severe emotional distress.'" *Competitive Enter. Inst.*, 150 A.3d at 1260 (quoting *Williams v. District of Columbia*, 9 A.3d 484, 493–94 (D.C. 2010)). Moreover, the D.C. Court of Appeals recently held that "a plaintiff whose emotional distress arises from harm suffered by a member of his or her immediate family must be 'present' when the harm occurs . . . ." *Republic of Sudan v. Owens*, 194 A.3d 38, 42 (D.C. 2018). The complaint contains no allegations that Plaintiff was present at the scene—in fact, he was incarcerated at the time of the events at issue. *See* Dkt. 1-1 at 15. Accordingly, Plaintiff cannot state claim for IIED.

## CONCLUSION

For the foregoing reasons, the Court will **GRANT** Defendant's motion to dismiss, Dkt. 5.

A separate order will issue.

        /s/ Randolph D. Moss
       RANDOLPH D. MOSS
       United States District Judge

Date: January 16, 2019